UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LANNING,

    Plaintiff,

v.

RICHARD WOREL and
UNKNOWN PENROSE,

    Defendants.
_____/

Case No. 1:17-cv-734

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on defendant Alice Penrose, M.D.'s motion for summary judgment based solely on failure to exhaust administrative remedies (ECF No. 25).

**I.     Background**

According to the amended complaint, while plaintiff was incarcerated at the Alger Correctional Facility in July 2004, he injured his right knee "during a workout routine doing squats." Amend. Compl. (ECF No. 9, PageID.48). Plaintiff complains that he notified the correctional officer on the wing, who contacted Nurse Linda Maki, but that the nurse refused to schedule plaintiff with the doctor. Over the course of the next 13 years, plaintiff's knee has gotten worse. Medical personnel have ordered x-rays, which show the slow deterioration of the knee. The specific allegations against Dr. Penrose are as follows:

> While at Cotton Prison [G. Robert Cotton Correction Facility "JCF"] in 2017, Dr. Penrose told me that she wanted me to do 20 crunches, then do 50 crunches a day.

1

> Impossible, with a bad knee.  Also to do 10 leg extensions every hour, every for two weeks while awake.

PageID.48.  Plaintiff alleged that he has been denied proper treatment, that Dr. Penrose was deliberately indifferent to his serious medical needs, that the doctor refused to order knee replacement surgery, and that the doctor inflicted emotional distress.  PageID.49, 51. While plaintiff alleged that defendants refused to order a knee replacement, he admits that from March to July 2017 he was given pain medication including 400mg of ibuprofen three times a day.  PageID.49-50.  Plaintiff's amended complaint also includes allegations against defendant Dr. Worel, which are not part of this motion.

For his relief, plaintiff wants, among other things, a payment of $218,000.000.00, knee replacement surgery at the hospital of his choice, that "the defendants' employer release both the plaintiff and the plaintiff's husband, James Allen Gilde III 459854, without parole," [1] and that he be removed from the sex offender registry.  PageID.52 (emphasis in original).

## II.    Defendant's motion for summary judgment

### A.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[1] MDOC public records indicate that James Allen Gilde is a Security Level V prisoner currently serving five sentences for assaulting prison employees in Lenawee and Gratiot Counties, and one sentence of second degree home invasion.  See http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=459854 .

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Failure to Exhaust

#### 1.    Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

3

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

Defendants have identified five grievances which plaintiff processed through each step of the MDOC's grievance procedure. Defendant's Brief (ECF No. 25, PageID.93); MDOC Prisoner Step III Grievance Report (ECF No. 25-1, PageID.98-107); Grievances (ECF No. 25-1, PageID.108-135). Of these five grievances, only one named defendant Dr. Penrose, JCF-17-03-0711-28E ("711"). PageID.93. The issue before the Court is whether plaintiff properly exhausted this grievance.

Grievance 711 was received on March 21, 2017. Grievance 711 (PageID.123). In it, plaintiff claims that on March 17, 2017, he discussed his right knee pain and lower back pain with Dr. Penrose, who prescribed 400 mg of "ibuprofen/motrin" three times a day and told plaintiff to:

> Do a yoga exercise called the "COBRA"; do 20 crunches a day, then do 50 a day (I can't do it); do 10 leg extentions [sic] a day for 2 wks, til my next medical provider call out. She also wants me on a pain med, for my "pain management." She's being deliberately indifferent to my serious medical needs, by exacerbating & masking the real cause of my pain, through meds & exercising. She also deliberately REFUSED to consider my request for possible knee replacement surgery.

PageID.123.

The respondents did not interview plaintiff because he was transferred at some point after filing the grievance. PageID.123. The Step I response denied the grievance based on the electronic medical record which indicated: that plaintiff was seen by a medical service provider (MSP) on March 17, 2017 for complaints of back, right knee, and right hip pain; that the MSP's plan of care included an increase in Motrin, adding Tylenol, and exercises for his knee and back; that right knee x-rays completed a few months earlier (November 9, 2016) indicated soft tissue swelling but no acute osseous changes; and that plaintiff was scheduled to follow up with the MSP. PageID.124.

5

Plaintiff's Step II Appeal was rejected as untimely. The rejection stated the following events: that plaintiff's Step I response was returned to him on April 3, 2017; that a Step II form was sent to him on April 20, 2017; the Step II response was due on April 26, 2017; and, that plaintiff did not return the Step II response until over one month later on May 31, 2017. PageID.122. The rejection was upheld at Step III. PageID.120.

In his one-page response brief (ECF No. 27), plaintiff stated that he exhausted the grievance, referring to page 23 of defendant's exhibit (PageID.120). The page referred to by plaintiff is the Step III decision which upheld the rejection of plaintiff's Step II appeal. Defendants filed a reply brief which reiterated that plaintiff did not properly exhaust his administrative remedies (ECF No. 28). Over the course of the next month and a half, plaintiff filed a sur-reply (not served on defendant) and a "supplement" (filed more than one month after the sur-reply) (ECF Nos. 29 and 33). Plaintiff did not seek leave to file these supplemental briefs, which are not properly before the Court. *See* W.D. Mich. LCivR 7.2(c).[2] However, even if the Court had granted plaintiff permission to file the supplemental briefs, these documents do not demonstrate that plaintiff properly exhausted any claims against Dr Penrose. In his sur-reply, plaintiff refers to a kite from a different prisoner ("Johnson") which appears as the first page in defendant's exhibit (ECF No. 25-1, PageID.119). Assuming that this kite was erroneously included in defendant's exhibit, no one has relied on this document for any purpose and the kite is irrelevant to the present motion. The gist of plaintiff's supplement is that he does not understand the grievance procedure, specifically the language on the Step III decision stating that "THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT" (ECF No. 33, PageID.169). Plaintiff's argument

---

[2] "Any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials. The moving party may, within fourteen (14) days after service of the response, file a reply brief not exceeding ten (10) pages. The Court may permit or require further briefing."

that he "was NEVER instructed as to where he should go, to further exhaust the issue" is irrelevant because there is no further appeal past Step III, and disingenuous in light of the fact that plaintiff has filed at least 38 grievances in the past eight years. *See* PageID.98-107.

In summary, plaintiff's Grievance 711 did not properly exhaust any claims against Dr. Penrose. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant Dr, Penrose is entitled to summary judgment on this claim.

### IV.   Recommendation

For these reasons, I respectfully recommend that defendant Dr. Penrose's motion for summary judgment on the basis of exhaustion (ECF No. 25) be **GRANTED** and that she be **DISMISSED** from this action.


Dated:  July 18, 2018                              /s/ Ray Kent
                                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).