UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LANNING,

    Plaintiff,

v.

    Case No. 1:17-cv-734

    Hon. Paul L. Maloney

RICHARD WOREL and
UNKNOWN PENROSE,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983. This matter is now before the Court defendant Richard Worel, D.O.'s motion for summary judgment (ECF No. 59).

    **I.**    **Plaintiff's complaint**

According to the amended complaint, while plaintiff was incarcerated at the Alger Correctional Facility in July 2004, he injured his right knee "during a workout routine doing squats." Amend. Compl. (ECF No. 9, PageID.48). Over the course of the next 13 years, plaintiff's knee has gotten worse. Medical personnel have ordered x-rays, which show the slow deterioration of the knee. The specific allegations against Dr. Worel are as follows:

> While at Cotton Prison in 2017, Dr. Penrose told me that she wanted me to do 20 crunches, then do 50 crunches a day. Impossible, with a bad knee. Also to do 10 leg extensions every hour, every day for two weeks while awake. Then: In April 2017, Dr. Worel wanted me to do exercises, from lower back pain exercises to crunches [yet again]. He also wants me to exacerbate this pain by doing these exercises. Furthermore, he has me taking 400 mg of ibuprofen/Motrin, and 2 Tylenol @325 mg to mask the pain. Both of these doctors are refusing to have my right knee replaced. They're both deliberately indifferent to my serious medical needs.

1

PageID.48. For his relief, plaintiff wants, among other things, a payment of $218,000.000.00, knee replacement surgery at the hospital of his choice, that "the defendants' employer release both the plaintiff and the plaintiff's husband, James Allen Gilde III 459854, without parole,"[1] and that he be removed from the sex offender registry. PageID.52 (emphasis in original). The Court previously granted Dr. Penrose's motion for summary judgment. *See* Order (ECF No. 55). This matter is now before the Court on defendant Dr. Worel's motion for summary judgment.

## II. Motions for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present

---

[1] MDOC public records indicate that James Allen Gilde is a Security Level V prisoner currently serving five sentences for assaulting prison employees in Lenawee and Gratiot Counties, and one sentence of second degree home invasion. *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=459854 .

>significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

  **B.**  **Eighth Amendment claims**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). In other words, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."

*Estelle*, 429 U.S. at 106.  When a prisoner received treatment for his condition, the prisoner must show that his treatment was "so woefully inadequate as to amount to no treatment at all."  See *Mitchell v. Hininger*, 553 Fed. Appx. 602, 604-05 (6th Cir. 2014), quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotation marks omitted).

A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer*, 511 U.S. at 834.  A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The objective component requires the infliction of serious pain or failure to treat a serious medical condition.  *Id.* at 8-9.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  See *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

C.     Discussion

Plaintiff's claim includes Dr. Worel's actions in 2017.  By way of background, plaintiff received physical therapy for knee pain and difficulty walking between January 6, 2015

and February 18, 2015.  Medical Record (ECF No. 61-1, PageID.301).  Plaintiff was discharged on February 18th, reporting to be "pain free" and stating that "he is 100% better than the start of care."  *Id*.  An x-ray dated November 9, 2016 indicated that plaintiff had mild prepatellar and suprapatellar soft tissue swelling with no acute osseous changes present.  *Id*. at PageID.302-303.  The medical provider reached this determination after correlating the x-ray with a previous study of April 25, 2016.  *Id*.

On March 28, 2017 (about four months after the most recent x-ray), plaintiff was transferred to the Earnest C. Brooks Correctional Facility (LRF).  *Id*. at PageID.304-306; Worel Aff. (ECF No. 59-3, PageID.291).  On March 30, 2017, Dr. Worel reviewed plaintiff's chart, which resulted in an order for citrate of magnesia and renewal of Tylenol.  Medical Record at PageID.307; Worel Aff. at PageID.291.  On April 1, 2017, plaintiff submitted a health care request ("kite") requesting x-rays of his right knee and hip due to "excruciating pain" and his desire to see if there was deterioration in the knee.  Kite (ECF No. 61-1, PageID.308).  Plaintiff also wanted a CT scan to his brain to see if he had suffered an injury to his memory cortex areas.  *Id*.  In response to the kite, a nurse advised plaintiff that he is scheduled to see a medical provider in the next couple of days and that he can discuss his requests at that time.  *Id*.  Plaintiff sent another kite asking to increase his Tylenol prescription to 2 tablets 3x a day.  *Id*. at PageID.309.  In response to the kite, a nurse advised plaintiff that he can address this at his upcoming appointment.  *Id*.

On April 6, 2017, Dr. Worel evaluated plaintiff for musculoskeletal matters (right knee pain, patella and lateral) and neurologic matters (daily headache for 11 years).  *Id*. at PageID.310-312.  Plaintiff informed the doctor that he injured his knee while doing squats in segregation many years ago (2004).  *Id*.  The doctor found that plaintiff had mild bilateral knee crepitance, no effusion, his varus and valgus stress test was negative, and his anterior and posterior

5

drawer signs were negative. *Id*. Based on his examination, the doctor ordered a beta blocker, decreased plaintiff's ibuprofen to 400 mg twice a day, and increased plaintiff's Tylenol to two tablets twice a day. *Id.*; Worel Aff. at PageID.291.

Plaintiff appeared for a follow-up related his headaches on May 31, 2017, but did not stay for his examination. Medical Record at PageID.314-315. When plaintiff was advised of the reason for the visit, he stated "that's alright I already talked to Dr. Sices about this," left health services, and shouted "that's OK, I'll see you in court." *Id*. The doctor noted that plaintiff left without an examination, discussion or education. *Id*. at PageID.315. Plaintiff did not complain of knee pain at the time. Worel Aff. at PageID.291. This was the last time Dr. Worel saw plaintiff. *Id*. (who transferred to the Saginaw Correctional Facility a few months later on September 12, 2017).

While plaintiff had other contact with the health care department, there is no record that he had any further treatment from Dr. Worel. *See, e.g.*, Kite (June 9, 2017) (requesting cortisone shorts for knee pain) (ECF No. 61-1, PageID.316); Nurse Visit (June 23, 2017) (examined plaintiff for concerns of circulation problem in right leg; no abnormal findings) (ECF No. 61-1, PageID.318); Examination by PA Spitters (August 24, 2017) (plaintiff arrived 20 minutes late for examination stating that "he gets to where he wants to when he wants to;" plaintiff complained of constant bowel movements after returning from hospital but would not allow the medical provider to perform an abdominal examination stating that "his husband normally is the only one to touch him"); plaintiff also complained of right knee pain but was negative for bone/joint symptoms or muscle weakness) (ECF No. 61-1, PageID.319-320); Examination with NP Lindhout (ECF No. 61-1, PageID.324-326) (when reviewing plaintiff's accommodations and history of ulcers, plaintiff wanted accommodations for his knee; plaintiff became argumentative;

however, the NP unable to discuss plan of care with plaintiff because he was escorted out of healthcare by a corrections officer).

Plaintiff filed a response to the motion for summary which is partially illegible. Plaintiff's Response (ECF No. 64). The response included among other things, plaintiff's "ONE TIME GENEROUS offer of $50 million to settle out of Court" in lieu of the $218 million demanded in the complaint. Attachment (ECF No. 64-1, PageID.335) (emphasis in original). Plaintiff also submitted an "Argument/Brief in support of claim" (ECF No. 64-1, PageID.336-337), which he claims was "re-subscribed" on September 21, 2018. The document is neither a declaration nor an affidavit. In short, plaintiff has not provided anything of substance to dispute the evidence presented by Dr. Worel.

Plaintiff's medical records and Dr. Worel's affidavit establish that the doctor evaluated plaintiff and set forth a course of treatment. Plaintiff refused to be examined during the second visit and implied that he was going to sue someone at the healthcare department. There is no evidence to support any claim that Dr. Worel was deliberately indifferent to a serious medical need. The records reflect that plaintiff had x-rays in 2016, that the defendant examined plaintiff in 2017, and that the doctor adjusted plaintiff's medication. There is no evidence that plaintiff requested a knee replacement or that a replacement was ever recommended. Even if plaintiff had asked Dr. the doctor for additional treatment for his right knee, "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotation marks omitted). For these reasons, defendant Dr. Worel's motion for summary judgment should be granted.

## III. Recommendation

Accordingly, I respectfully recommend that defendant Dr. Worel's motion for summary judgment (ECF No. 59) be **GRANTED** and that this action be **TERMINATED**.

Dated: July 31, 2019

/s/ Ray Kent
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).